## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Leah Landman** | Case No.: |
| **Plaintiff,** | <u>**CLASS ACTION**</u> |
| **v.** | **THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 ET. SEQ.** |
| | **N.Y. GEN. BUS. LAW §349 DECEPTIVE ACTS AND PRACTICES UNLAWFUL** |
| **General Motors LLC, OnStar LLC, LexisNexis Risk Solutions Inc.** | **N.Y. CIV. RIGHTS LAW §50 ET. SEQ.** |
| **Defendants.** _____/ | **JURY TRIAL DEMANDED** |

### INTRODUCTION

1. Plaintiff, Leah Landman ("Plaintiff") brings this action for herself and on behalf of all persons ("Class Members") who had their driving data ("telematics") collected and shared by General Motors LLC ("GM") and OnStar LLC ("OnStar") to LexisNexis Risk Solutions Inc. ("Lexis") (collectively "Defendants") without their knowledge and/or consent.

### PARTIES

2. Plaintiff is a natural person residing in the State of New York. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

3. Defendant GM is a corporation headquartered in Detroit, Michigan, and registered with the New York Secretary of State doing business in the State of New York.

4. Defendant OnStar is a corporation headquartered in Detroit, Michigan, and registered with the New York Secretary of State doing business in the State of New York.

5. Defendant Lexis is a global data and analytics company headquartered in New York, New York, and registered with the New York Secretary of State doing business in the

State of New York.

6. Defendants GM and OnStar are furnishers of information as contemplated by 15 U.S.C. §1681a that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

7. Defendant Lexis is a consumer credit reporting agency as defined in 15 U.S.C. §1681a(f), headquartered and doing business in the State of New York.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331. Jurisdiction arises for Plaintiffs' supplemental state claims under 28 U.S.C. §1367.

9. This action arises out of Lexis' violations of the FCRA; GM, OnStar, and Lexis' violations of N.Y. Gen. Bus. Law §349; and GM, OnStar, and Lexis' violations of N.Y. Civ. Rights Law §50.

10. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2) a substantial part of the events and/or omissions giving rise to the underlying action occurred in the Southern District of New York. 28 U.S.C. §1391(b)(2).

## APPLICABLE LAW

11. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), protects information collected by consumer reporting agencies such as credit bureaus, medical information companies and tenant screening services. Information in a consumer report cannot be provided to anyone who does not have a purpose specified in the Act. Companies that provide information to consumer reporting agencies also have specific legal obligations, including the duty to investigate disputed information. In addition, users of the information for credit, insurance, or employment purposes must notify the consumer when an adverse action

is taken on the basis of such reports.[1]

12. The purpose of N.Y. Gen. Bus. Law §349 is to protect the consuming public from any person, firm, corporation or association that engages in deceptive or unfair acts or practices in the conduct of any trade or commerce.

70. While the State of New York does not recognize the common law right to privacy, N.Y. Civ. Rights Law §50 provides the basis for such claims. This statute protects against the appropriation of a plaintiffs' name or likeness for a defendant's benefit and create a cause of action in favor of any person whose name, portrait, or picture is used for advertising purposes or for trade without the plaintiffs' consent. Farrow v. Allstate Ins. Co., 53 A.D.3d 563, 564 (2008).

## **GENERAL ALLEGATIONS**

13. Plaintiff brings this action under the FRCA, N.Y. Gen. Bus. Law §349, and N.Y. Civ. Rights Law §50, to challenge the actions of Defendants regarding erroneous reports of derogatory and negative driving information made without Plaintiff's knowledge and/or consent, and the illegal transfer and publication of same.

14. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

15. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

16. Unless otherwise stated, all the conduct engaged in by Defendants took place in the State of New York.

17. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives, and insurers of Defendants named.

---

[1] https://www.ftc.gov/legal-library/browse/statutes/fair-credit-reporting-act

18. At all times relevant, Plaintiff was an individual residing within the State of New York.

19. At all times relevant, Defendants conducted business within the State of New York.

20. On or around October 2020, Plaintiff Landman purchased a 2016 Chevrolet Equinox in Buffalo, New York.

21. The purchase agreement, signed by Plaintiff Landman, makes no mention of Lexis, data sharing, and/or anything privacy related.

22. At purchase, Plaintiff Landman was told that her 2016 Chevrolet Equinox came equipped with OnStar, and she was instructed to download the "My Chevrolet" App to view her car diagnostics. There was no mention of Lexis, data sharing, and/or anything privacy related.

23. Plaintiff Landman received diagnostic reports through the "Chevrolet Smart Driver" page of her "My Chevrolet" App. The diagnostic reports did not mention data sharing to third parties, nor did Plaintiff Landman receive any other information from Defendants regarding same.

24. Plaintiff Landman retained the same insurance provider, Kemper, from October 2019 until July 2022.

25. Within the first twelve (12) months of service, Kemper increased Plaintiff Landman's insurance premiums significantly.

26. Plaintiff Landman received no information from Kemper regarding the basis for the increase in her insurance premiums.

27. As a result of the increase in her insurance premiums, Plaintiff Landman switched insurance providers in July 2022.

28. Upon information and belief, the rise in Plaintiff's insurance premiums were a direct and proximate result of the deceptive acts and practices of Defendants.

29. Upon information and belief, GM and OnStar illegally furnished Plaintiff's private driving information to Lexis without her knowledge and/or consent, which Lexis utilized to prepare consumer disclosures available for public consumption, including car insurance companies.

30. Lexis' consumer disclosures contain each driving event, including trip details that show the start date, end date, start time, end time, acceleration events, hard brake events, high speed events, distance, and VIN.

31. Notably absent from these consumer disclosures is any context related to these driving events. The reports do not define what these events mean nor how they are calculated. Furthermore, the reports do not explain how or why someone might have experienced these events. Stating these events, by themselves, says nothing of the other driving conditions and factors one may have experienced.

32. The only way for telematics data to reach insurance companies is if someone "opts-in" with their insurance company to get a safe driving discount.

33. Plaintiff never opted into any insurance program that would have allowed her information to be shared.

34. Plaintiff is informed and believes that General Motors and OnStar sold and/or shared her driving data to Lexis without her knowledge and/or consent.

35. Upon information and belief, the uncontextualized, misleading, and personal driving information on her consumer disclosure harmed Plaintiffs' car insurance by significantly raising her insurance premiums.

36. Additionally, the data presented on the Lexis consumer disclosure is so decontextualized that it can hardly be called accurate. Nevertheless, insurance companies rely upon these consumer reports to determine pricing.

37. Moreover, Plaintiff is informed and believes that GM and OnStar mislead individuals about their data sharing practices. Plaintiff never knowingly consented to these

practices.

38. The purchase agreement said nothing of Lexis and/or data sharing.

39. The OnStar User Terms included on the OnStar website explain that "GM collects, uses, and shares information from and about You and your Vehicle. The GM Privacy Statement describes what GM does with that information. *You consent to the collection, use, and sharing of information described in the Privacy Statement*[.]" (emphasis added)

40. OnStar includes a supplemental privacy statement for application services. It explains that OnStar collects and treats "information from you as described in the OnStar Privacy Statement."

41. Finally, the OnStar Privacy Statement, reads in relevant part:

> **Third-Party Business Relationships:** With business that GM enters into business relationships, such as SiriusXM, in connection with their products and services; research institutes, for research and development purposes (*for example, improving highway safety*); or dealers, fleet, or rental car companies, for service or maintenance of your vehicle. We may also share data with third parties for marketing activities (with necessary consents) or where you have elected to receive a service from them and/or authorized them to request data from GM (*for example, financial organizations who offer financing for the purchase or lease of GM vehicles or usage based insurance providers*).

42. This section, neatly hidden on their website, and made inconspicuous through the downloading of mobile applications, at worst, do not grant OnStar or GM the right to furnish car driving data to Lexis and is ambiguous at best. The applicable section—"where you have elected to receive a service from them and/or authorized them to request data from GM"—does not mention Lexis and is buried at the tail end of the paragraph. Furthermore, it shifts the onus on consumers, who are likely already unaware that car data is being tracked and shared. If consumers are aware, they would have to comb through every insurance carrier's clickwrap agreements to get a quote.

43. This scheme is deceptive, unfair, and misleading to consumers.

44. Plaintiff is informed and believes that Lexis continues to report this damaging information or consumer disclosures without regard to their context. This information,

standing alone, is incomplete. These data metrics do not provide an accurate picture of the individual to whom the report relates.

45. And like with Plaintiff, much of this information is likely reported without consumers' knowledge and/or consent.

46. Plaintiff's insurance premiums have gone up substantially because of Defendants' actions.

47. On March 11, 2024, the New York Times reported an investigative piece about this exact issue. The article highlights individuals who have had their insurance rates increase due to Lexis publishing, among others, GM car drivers' data:

> "Modern cars are internet-enabled, allowing access to services like navigation, roadside assistance and car apps that drivers can connect to their vehicles to locate them or unlock them remotely. In recent years, automakers, including G.M., Honda, Kia and Hyundai, have started offering optional features in their connected-car apps that rate people's driving. Some drivers may not realize that, if they turn on these features, the car companies then give information about how they drive to data brokers like LexisNexis… Especially troubling is that some drivers with vehicles made by G.M. say they were tracked even when they did not turn on the feature — called OnStar Smart Driver — and that their insurance rates went up as a result… Even for those who opt in, the risks are far from clear. I have a G.M. car, a Chevrolet. I went through the enrollment process for Smart Driver; there was no warning or prominent disclosure that any third party would get access to my driving data."

48. Plaintiffs' privacy has been gravely invaded by Defendants' improper actions.

## CLASS ALLEGATIONS

### PROPOSED CLASS

49. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

50. Plaintiff brings this case on behalf of Classes defined as follows:

FCRA Class
**All persons who (1) had their car's driving data (telematics) collected and shared with Lexis; (2) without those persons' consent; and (3) those persons' telematics appeared on at least one Lexis consumer**

**disclosure.**

N.Y. Gen. Bus. Law §349 Class
**All persons who (1) had their car's driving data (telematics) collected and shared with Lexis; (2) without those persons' consent.**

N.Y. Civ. Rights Law §50 Class
**All persons who (1) had their car's driving data (telematics) collected and shared with Lexis; (2) without those persons' consent; and (3) those persons' telematics appeared on at least one Lexis consumer disclosure.**

70. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

## NUMEROSITY

71. Upon information and belief, Defendants OnStar and GM shared millions of consumers' driving behavior data to Lexis without their knowledge and/or consent.

72. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of determination from Defendants' records.

## COMMON QUESTIONS OF LAW AND FACT

73. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

   a. Whether Defendants' practices are considered unfair and/or deceptive.

   b. Whether Defendants' practices constitute an invasion of privacy.

   c. Whether Defendants' conduct was knowing and willful.

   d. Whether Defendants' are liable for damages, and the amount of such damages.

   e. Whether Defendants' should be enjoined from such conduct in the future.

74. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely track driving data is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

75. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

76. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

77. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdensome by individual litigation of such cases.

78. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATION OF THE FRCA, 15 U.S.C. §1681e(b)**

**(On Behalf of Plaintiff and the FCRA Class Against Lexis Only)**

79. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

81. Lexis, acting as a consumer reporting agency as defined by 15 U.S.C. §1681c(1), has failed to implement procedures to maintain maximum possible accuracy regarding Plaintiff's and the Class Members' driving data.

82. Lexis has knowingly and willfully engaged in the collection and production of inaccurate data metrics regarding Plaintiff's and other consumers' driving abilities.

83. As a result of Lexis' conduct, insurance carriers and others who view these consumer reports receive and in turn rely on an inaccurate representation of Plaintiff's and other consumers' driving abilities.

84. The foregoing deceptive acts and practices constitute reckless and/or negligent violations of the FCRA, including but not limited to 15 U.S.C. §1681e(b).

85. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1); statutory damages pursuant to 15 U.S.C. §1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

86. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681o(a)(2) from Defendants.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE N.Y. GEN. BUS. LAW §349 DECEPTIVE ACTS AND PRACTICES UNLAWFUL
### (On Behalf of Plaintiff and the N.Y. Gen. Bus. Law §349 Class Against All Defendants)

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. By their conduct, including engaging in the deceptive scheme to share and publish personal driving data without Plaintiff's knowledge and/or consent, Defendants have engaged and continue to engage in deceptive acts and practices in the conduct of business, trade and commerce, and in the furnishing of services within the State of New York, in violation of N.Y. Gen. Bus. Law §349.

89. N.Y. Gen. Bus. Law §349(h) provides in relevant part that:

> … any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, [and] an action to recover his actual damages…

90. Plaintiff and the Class are "person[s] who have been injured" by reason of the Defendants' violation of N.Y. Gen. Bus. Law §349.

91. GM and OnStar should not have shared Plaintiff's private driving information without the Plaintiff's informed consent, and Lexis should not have published it.

92. Furthermore, Defendants should have realized that sharing this information, without any context, inaccurately portrays consumers' driving experience, and in turn, can negatively impact their eligibility for and/or cost of insurance.

93. The foregoing deceptive acts and practices constitute willful, reckless and/or negligent violations of N.Y. Gen. Bus. Law §349.

94. As a result of each and every willful violation of N.Y. Gen. Bus. Law §349, Plaintiff is entitled to actual damages as the Court may allow pursuant to N.Y. Gen. Bus. Law §349; statutory damages pursuant to N.Y. Gen. Bus. Law §349; punitive damages as the Court may allow pursuant to N.Y. Gen. Bus. Law §349; and reasonable attorney's fees and costs pursuant to N.Y. Gen. Bus. Law §349 from Defendants.

95. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to N.Y. Gen. Bus. Law §349; and reasonable attorney's fees and costs pursuant to N.Y. Gen. Bus. Law §349 from Defendants.

96. Finally, as a result of each and every knowing and/or willful violation of N.Y. Gen. Bus. Law §349, Plaintiff is entitled to injunctive relief pursuant to N.Y. Gen. Bus. Law §349.

## COUNT III

### VIOLATIONS OF N.Y. CIV. RIGHTS LAW §50

**(On Behalf of Plaintiff and the N.Y. Civ. Rights Law §50 Class Against All Defendants)**

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. In New York, privacy claims are founded upon N.Y. Civ. Rights Law §§50 and 51 to "protect against the appropriation of a plaintiff's name or likeness for a defendant's benefit and create a cause of action in favor of any person whose name, portrait, or picture is

used for advertising purposes or for trade without the plaintiff's consent." Farrow v. Allstate Ins. Co., 53 A.D.3d 563, 564 (2008).

73. N.Y. Civ. Rights Law §50 prohibits "[a] person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait of any living person without having first obtained the written consent of such person…" The statute requires that a plaintiff be capable of identification from the objectionable material itself. Cohen v. Herbal Concepts, Inc., 63 N.Y.2d 379, 384 (1984).

74. Defendants used Plaintiff's name and private information for "purposes of trade" without her knowledge and/or consent, as part of their scheme to deceive consumers regarding the nature of their business practices.

75. GM and OnStar illegally furnished Plaintiff's private driving information to Lexis without their knowledge and/or consent, which Lexis utilized to prepare consumer disclosures available for public consumption, including car insurance companies.

76. OnStar and GM should not have shared Plaintiff's private driving information without the Plaintiff's informed consent, nor should Lexis have published it.

77. The foregoing deceptive acts and practices constitute willful, reckless and/or negligent violations of N.Y. Civ. Rights Law §50.

78. Pursuant to N.Y. Civ. Rights Law §§50 and 51, Plaintiff is entitled to actual damages, statutory damages, and/or punitive damages as the Court may allow, as well as reasonable attorney's fees and costs from Defendants.

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

    a) An award of actual damages pursuant to 15 U.S.C. §1681n(a)(1);

    b) An award of statutory damages pursuant to 15 U.S.C. §1681n(a)(1);

    c) An award of punitive damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(2);

d) An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3), and 15 U.S.C. §1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

e) An award of actual damages pursuant to N.Y. Gen. Bus. Law §349;

f) An award of costs of litigation and reasonable attorney's fees, pursuant to N.Y. Gen. Bus. Law §349;

g) An injunction against Defendants' further data collection and/or sharing to third parties without their consent pursuant to N.Y. Gen. Bus. Law §349;

h) An award for actual damages pursuant to N.Y. Civ. Rights Law §§50 and 51;

i) An award for punitive damages pursuant to N.Y. Civ. Rights Law §§50 and 51; and

j) Any other relief the Court may deem jut and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 25, 2024                    /s/Jeffrey L. Haberman
                                         Jeffrey L. Haberman
                                         Bar No.: JH8209
                                         Scott P. Schlesinger
                                         *(Pro Hac Vice Anticipated)*
                                         Jonathan R. Gdanski
                                         *(Pro Hac Vice Anticipated)*
                                         Lili D. Lowell
                                         *(Pro Hac Vice Anticipated)*
                                         SCHLESINGER LAW OFFICES, P.A.
                                         1212 S.E. 3rd Ave.
                                         Fort Lauderdale, FL 33316
                                         Phone: 954.467.8800

Fax: 954.320.9509
Email: JHaberman@schlesingerlaw.com
Email: Scott@schlesingerlaw.com
Email: JGdanski@schlesingerlaw.com
Email: Lowell@schlesingerlaw.com